# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN SNEAD, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. EDCV 07-00367 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), terminating his supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Administrative Proceedings

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2].  Plaintiff, a 20 year-old man, was awarded SSI benefits as a child.  When he turned 18, his eligibility for benefits was reevaluated under the adult disability standard. [JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had a learning disability that was severe, but that he retained the residual functional capacity ("RFC") to perform "simple repetitive tasks not requiring hypervigilance, or supervising or being in charge

1  of the safety operations of others."[JS 2; Administrative Record ("AR") 17]. The ALJ found that plaintiff's

2  RFC did not preclude performance of jobs available in significant numbers in the national economy, and

3  therefore she concluded that plaintiff's disability had ceased effective December 1, 2004. [AR 19-20].

4  **Standard of Review**

5  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

6  evidence or is based on legal error. Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006);

7  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than a mere

8  scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  "It

9  is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch

10  v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to

11  review the record as a whole and to consider evidence detracting from the decision as well as evidence

12  supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel,

13  188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational

14  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas,

15  278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

16  **Discussion**

17  **Right to counsel**

18  Plaintiff contends that he was prejudiced by the ALJ's failure to advise him of his right to counsel.

19  [JS 4].

20  A social security disability claimant has "a statutory right, which may be waived, to be represented

21  by counsel before an ALJ," Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997)(per curiam), or

22  alternatively, to be represented by a non-attorney. See 20 C.F.R. §§ 404.949-.950, 416.1449-.1450.  The

23  ALJ is not "'a mere umpire' during disability proceedings. Rather, the ALJ has 'a special duty to fully and

24  fairly develop the record and to assure that the claimant's interests are considered.'" Widmark v. Barnhart,

25  454 F.3d 1063, 1068 (9th Cir.  2006)(quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(per

26  curiam) and Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983)). When a claimant is not represented by

27  counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and

28  explore for all relevant facts.  The ALJ must be especially diligent in ensuring that favorable as well as

1  unfavorable facts and circumstances are elicited." Vidal v. Harris, 637 F.2d 710, 713 (9th Cir.

2  1981)(quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).  The ALJ's duty to develop the record

3  is heightened when a claimant's ability to protect his interests is affected by a mental impairment. Higbee,

4  975 F.2d at 561-562; Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  "When 'the heavy burden

5  imposed by Cox' is not met, and the claimant may have been prejudiced, 'the interests of justice demand

6  that the case be remanded.'" Higbee, 975 F.2d at 561 (quoting  Vidal, 637 F.2d at 714-715 and citing

7  Thompson v. Schweiker, 665 F.2d 936, 941 (9th Cir.1982); Cruz v. Schweiker, 645 F.2d 812, 814 (9th

8  Cir.1981); and Cox, 587 F.2d at 991).

9        Plaintiff signed a form appointing his non-attorney mother, Merle Snead, as his representative, and

10 Ms. Snead represented him during the administrative hearing. [AR 21-22, 33-57].  The Commissioner

11 complied with his statutory obligation to furnish plaintiff with written notice of his right to representation.

12 See 42 U.S.C. §§ 406(c) & 1383(d)(2)(B)[1]; 20 C.F.R. § 404.1706.[2] [AR 24-28 (notice of hearing); AR 29-31

13 (letter advising plaintiff of hearing procedures, his right to representation, and a list of organizations to

---

15    [1]    Sections 406(c) and 1383(d)(2)(D) state:

17          The Commissioner of Social Security shall notify each claimant in writing, together
18          with the notice to such claimant of an adverse determination, of the options for
             obtaining attorneys to represent individuals in presenting their cases before the
19          Commissioner of Social Security. Such notification shall also advise the claimant of
             the availability to qualifying claimants of legal services organizations which provide
20          legal services free of charge.

22    [2]    20 C.F.R. § 404.1706 states:

23          If you are not represented by an attorney and we make a determination or decision
             that is subject to the administrative review process provided under subpart J of this
24          part and it does not grant all of the benefits or other relief you requested or it
             adversely affects any entitlement to benefits that we have established or may
25          establish for you, we will include with the notice of that determination or decision
             information about your options for obtaining an attorney to represent you in dealing
26          with us. We will also tell you that a legal services organization may provide you with
             legal representation free of charge if you satisfy the qualifying requirements
27          applicable to that organization.

3

contact for a referral to a private attorney, including one who might be willing to take his case on a contingent fee basis)].

During the hearing, the ALJ made no inquiries of plaintiff or his mother regarding the decision to proceed without counsel. The ALJ did not advise plaintiff of his right to counsel. She made no attempt to determine whether plaintiff had read or understood the written notices provided to him about his right to counsel and was waiving that right knowingly. The only evidence in the record bearing on that question is an acknowledgment of receipt of the notice of hearing signed by Ms. Snead. [AR 23].

Plaintiff originally was found disabled and entitled to childhood SSI benefits because he had mental retardation and a learning disorder. Prior to the ALJ's challenged decision finding that plaintiff's disability had ceased, plaintiff had been found entitled to continuing SSI benefits on the basis of a learning disorder and speech and hearing delays. [AR 58-138]. The ALJ found that plaintiff continued to have a severe learning disability. She found that his full scale IQ of 78 placed him in the borderline to low average range of intellectual functioning. [AR 18]. Plaintiff graduated from high school, but he attended special education classes freshman through senior year in math, science, and English. [AR 37]. Plaintiff also attended special education classes in elementary school and middle school. [See AR 18, 329-353, 455, 484, 605].

On this record, it cannot safely be concluded that plaintiff knowingly waived his right to counsel. Plaintiff's mother was not authorized to make that decision on his behalf. Moreover, the record does not demonstrate that Ms. Snead herself understood the implications of acting as her son's representative, or that he could be represented by a lawyer and might be able to retain one on a contingent fee basis. See Vidal, 637 F.2d at 714 and n.3 (concluding that the claimant's mental retardation, unfamiliarity with the hearing procedure, and brief answers to the ALJ's statements concerning the right to representation raised a "serious question" whether the claimant knowingly waived his right to representation at the hearing).

The absence of counsel prejudiced plaintiff because the record indicates that neither he nor his mother (who apparently had no other qualification to serve as his representative) were able adequately to protect his interests during the hearing, and the ALJ did not satisfy her "heavy burden" to ensure that plaintiff's interests were protected by scrupulously developing the record to bring out both favorable and unfavorable evidence. The ALJ began her examination of plaintiff by asking background facts. [AR 36-37]. When the ALJ asked plaintiff his high school GPA, his answer was a question: "Was it a 2.0?" Ms.

Snead then interjected, asking "Your Honor, can I say something?" Without asking Ms. Snead what she wanted to say, the ALJ denied her permission to speak, explaining "You're the Representative . . . You cannot be a witness. I'm sorry. . . . You're not under oath for testimony." [AR 37].

At the conclusion of her examination, the ALJ asked Ms. Snead whether she had any questions for her son. Ms. Snead asked plaintiff whether he believed it was true that he had a 2.0 GPA. When plaintiff answered "Yes," Ms. Snead asked the ALJ if she could show plaintiff a copy of a transcript that was not an exhibit. The ALJ instructed Ms. Snead that she could not show plaintiff anything that was not an exhibit, but that she could make a copy of the transcript and give it to the ALJ so it would added as an exhibit to the file. [AR 46]. Ms. Snead said "Okay," but instead of asking whether she could proceed with her questioning or make a copy of the exhibit and then proceed, Ms. Snead simply said "That's all, Your Honor" and ended her examination. [AR 46]. The ALJ later admitted into evidence plaintiff's Upland High School transcript

The foregoing exchange is troubling for at least two reasons. Social security disability hearings are informal, and the federal rules of evidence do not apply. They are "inquisitorial" in nature "rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting of benefits. . . ." Sims v. Apfel, 530 U.S. 103, 110-111 (2000). The ALJ's peremptory denial of Ms. Snead's request to speak after plaintiff's testimony about his GPA was unwarranted. It is not clear that Ms. Snead was attempting to testify, but even if she had done so, the ALJ simply could have disregarded any testimony not under oath. Furthermore, Ms. Snead could have been placed under oath and testified on her son's behalf, either at that point or later during the hearing. Plaintiff lived with his mother, and the record indicates that she was actively involved in his life. Thus, her testimony likely would have been probative and helpful to plaintiff, probably more so than that of plaintiff's sister, who did testify. The potential importance of Ms. Snead's testimony is magnified by the fact that plaintiff had borderline intellectual functioning, and the hearing transcript reflects difficulty on his part in articulating coherent responses to some of the questions asked of him. Instead of seeking to elicit or at least permit Ms. Snead's testimony, however, the ALJ misleadingly suggested that she "cannot be a witness." [AR 37].

In addition, the ALJ's examination of plaintiff focused on two areas: his job history and recent job hunting efforts, including his past employers, the duration of employment, and the reasons his jobs ended, and his aborted attempts to get post-secondary education at a barbering school and the University of

5

Phoenix, and what amounted to a cross-examination concerning whether he had given adequate consideration to community college and available modes of transportation to get there. [See AR 36-45].

In assessing the ALJ's conduct of the hearing, the "crucial question" is whether the ALJ elicited sufficient testimony, or developed other evidence, "regarding the effect plaintiff's condition has on [his] ability to perform work-related activities." Mendoza v. Barnhart, 436 F.Supp.2d 1110, 1116 (C. D. Cal. 2006). A claimant's employment and educational history certainly may shed light on that question, directly or inferentially, but that does not obviate the need to obtain the claimant's testimony describing the nature of his or her subjective symptoms and  functional limitations.  See Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993)(stating that in determining "whether or not the ALJ has met his or her obligation to adequately develop the record," the central inquiry "is whether sufficient questions were asked to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities").  The ALJ did not make a meaningful attempt to elicit testimony from plaintiff regarding the specific nature of his subjective mental functional limitations and how those limitations affected his ability to perform work-related activities, whether in his activities of daily living or in his specific past jobs.  See Mendoza, 436 F.Supp.2d at 1115-1116 (holding that the ALJ failed in his duty to develop the record where "the ALJ elicited absolutely no testimony from plaintiff or her brother regarding the effect plaintiff's condition has on her ability to perform work-related activities" and "gave plaintiff little opportunity to, elaborate further on this crucial question")(alterations omitted)(quoting Cox, 587 F.2d at 991 and Vidal, 637 F.2d at 714-715).

The absence of that testimony also left a hole in the ALJ's credibility finding. The ALJ summarized plaintiff's sister's hearing testimony (which was elicited by Ms. Snead). [AR 18]. The ALJ also refers vaguely to plaintiff's "alleged subjective symptoms and functional limitations related to his impairment of record" and his "assertions as to the claimant having limited activities," but she does not specifically describe or summarize any testimony about his subjective symptoms and limitations.  The only testimony she explicitly mentioned was plaintiff's testimony about his work history, which she used to discredit his unspecified subjective complaints and limitations. [AR 18]. Plaintiff's work history does not convincingly justify rejecting the alleged severity of subjective limitations that he was never asked about during the

hearing and that the ALJ does not describe. Greger v. Barnhart,  464 F.3d 968, 972 (9th Cir. 2006)("In making a credibility determination, the ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.")(internal quotation marks and ellipsis omitted).

Furthermore, it is difficult to see how plaintiff's work history is genuinely inconsistent with his allegation that a learning disability and borderline intellectual functioning render him disabled. [AR 18]. The ALJ described plaintiff's work as "sporadic," and "short term," often involving part-time and seasonal jobs.  Plaintiff testified that the longest he had held a job was five months, working stocking and blowing up balloons at a party store.[AR 18, 40-41].  See Lewis v. Apfel,  236 F.3d 503, 516 (9th Cir. 2001)("[T]he fact that [the claimant] worked twenty hours per week for short periods in the past did not show that he could work twenty hours per week on a sustained basis. The ALJ must inquire whether the claimant has 'residual functional capacity for work activity on a regular and continuing basis.' 'Occasional symptom-free periods-and even the sporadic ability to work-are not inconsistent with disability.'")(quoting 20 C.F.R. §§ 404.1545 & 416.945 and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)). Plaintiff testified that he had "tried working at Kohl's, at Big Lots, . . . at Party America, . . . at Shells, . . . at MacDonald's, . . . there's more. . . . I have tried a lot." [AR 40].  He said his employers "told me that I'm going to[o] slow paced, or they don't need my help no more," or "we'll call you if we need any more assistance." [AR 40].  It seems unlikely that an employer would tell plaintiff that he was no longer needed because he had a learning disability or low intellectual functioning.  Under these circumstances, plaintiff's work history does not bear the weight the ALJ sought to place on it.

The ALJ also rejected plaintiff's allegations of a disabling learning disability because he was able to earn his high school diploma, "albeit with a lower than average academic GPA." [AR 18]. Missing is any mention of the fact that plaintiff took only special education classes in the core academic subjects of math, science, and English.  Furthermore, his cumulative academic GPA of 1.55 in grades 9 through 12 was far below average, giving him a class rank of 762 out of a class of 765. [AR 270].

The record fails to establish that plaintiff made a knowing waiver of his right to counsel.  Plaintiff was prejudiced by the absence of counsel because the ALJ did not discharge her duty to fully and fairly develop the record to ensure that plaintiff's interests were protected.  Under these circumstances, a remand for further administrative proceedings and a new hearing is the appropriate remedy.  See Vidal, 637 F.2d

1   at 715 (remanding where the claimant was prejudiced by the absence of counsel); <u>see generally</u> <u>Benecke</u>

2   <u>v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004)(stating that when a court reverses an administrative

3   determination, "the proper course, except in rare circumstances, is to remand to the agency for additional

4   investigation or explanation") (quoting <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (per curiam)).

**Conclusion**

6          For the reasons stated above, the Commissioner's decision is not supported by substantial evidence

7   and contains legal error.  Accordingly, the Commissioner's decision is **reversed, and this case is remanded**

8   **for further administrative proceedings consistent with this memorandum of decision.**

10  **IT IS SO ORDERED.**

12  DATED: May 2, 2008

/ s /

_____
ANDREW J. WISTRICH
United States Magistrate Judge